**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 5 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

PUBLIC SERVICE COMPANY OF OKLAHOMA,

    Petitioner and Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD,

    Respondent and Cross-Petitioner,

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL UNION 1002,

    Intervenor.

Nos. 01-9525 &
01-9533

---

**Appeal from National Labor Relations Board**
**(Nos. 17-CA-18967,  17-CA-18989, and 17-CA-19418)**

---

Lynn Paul Mattson (Jon E. Brightmire and Michael C. Redman with him on the
briefs) of Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, Oklahoma, for
Public Service Company of Oklahoma.

Fred B. Jacob (Robert J. Englehart, Arthur F. Rosenfeld, John E. Higgins, Jr.,
John H. Ferguson, and Aileen A. Armstrong with him on the brief) of National
Labor Relations Board, Washington, D.C., for National Labor Relations Board.

Sue D. Gunter (Victoria L. Bor with her on the brief) of Sherman, Dunn, Cohen,
Leifer, Yellig P.C., Washington, D.C., for Intervenor.

---

Before **O'BRIEN** and **McWILLIAMS**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

**BRORBY**, Senior Circuit Judge.

---

Public Service Company of Oklahoma petitioned for review of an order issued by the National Labor Relations Board. Among other things, the order required the Company to bargain collectively and in good faith with the International Brotherhood of Electrical Workers, Local Union 1002. The Board filed a cross-application for enforcement of the order. We granted the Union permission to intervene in support of the Board. Exercising jurisdiction under § 10(e) and (f) of the National Labor Relations Act, *see* 29 U.S.C. § 160(e) & (f), we deny the Company's petition for review and grant the Board's cross-application for enforcement.[1]

Public Service Company of Oklahoma is a public utility providing electricity to customers in Oklahoma, Louisiana, Arkansas, and Texas. For almost fifty years, the Company has had a collective bargaining relationship with the International Brotherhood of Electrical Workers, Local Union 1002.

---

[1] We also deny the Union's motion for leave to file a surreply brief.

The Company and the Union began negotiating a new collective bargaining agreement on July 1, 1996. They met regularly for nearly six months without reaching an agreement. Throughout negotiations, Public Service Company insisted on several contract proposals granting it greater management rights in a variety of areas, arguing increased management control was necessary to make the Company more competitive in a soon-to-be deregulated economic environment. The Company argued it was not trying to "break" the Union but "to clearly establish the rights of [the Company's] management to run the business without interference." The Union did not agree to any of the Company's contract proposals. Public Service Company, accusing the Union of negotiating in bad faith, declared an impasse in bargaining. The Company then implemented portions of its final contract offer on December 29, 1996.

Following Public Service Company's implementation of its final contract offer, the Union filed three separate unfair labor practice charges against the Company.[2] After investigating the charges, General Counsel for the National

---

[2] Public Service Company also filed three unfair labor practice charges against the Union. The Company argued, among other things, the Union "refused to bargain in good faith" with the Company. The Regional Director for the National Labor Relations Board did not issue a complaint on any of the charges, finding "insufficient evidence" the Union "engaged in conduct designed to frustrate bargaining" or "unlawfully refused to bargain."

Labor Relations Board issued a consolidated complaint against the Company. In due course a hearing was held, and the administrative law judge issued a decision finding, among other things, the Company violated § 8(a)(1) and (5) of the National Labor Relations Act by insisting on proposals undermining "the Union's representational function" as a condition for agreement. Although the Company filed exceptions to the administrative law judge's opinion, a three-member panel of the National Labor Relations Board affirmed "the judge's rulings, findings, and conclusions." The Board found the Company's contract proposals "would have given the [Company] extraordinarily broad control over employee benefits and discipline and discharge." The Company's "proposals taken as a whole required the Union to cede substantially all of its representational function." The Board concluded the Company violated the Act by "insisting" on these proposals throughout negotiations "as a price for any collective-bargaining agreement." This petition for review and cross-application for enforcement followed.

**Employer's Bad-Faith Conduct**

Public Service Company argues the National Labor Relations Board's decision finding the Company bargained in bad faith is inconsistent with established case law. We review the Board's conclusions of law de novo and "uphold the [Board's] factual findings if they are supported by substantial

-4-

evidence in the record as a whole." *See N.L.R.B. v. F & A Food Sales, Inc.*, 202 F.3d 1258, 1260 (10th Cir. 2000) (quotation marks and citation omitted). Under the National Labor Relations Act, employers commit an unfair labor practice if they "interfere with, restrain, or coerce employees in the exercise of the[ir] rights" to organize and bargain collectively, 29 U.S.C. § 158(a)(1), or if they "refuse to bargain collectively with the representatives of [their] employees," 29 U.S.C. § 158(a)(5). The Act defines the obligation of employers to bargain collectively as the "obligation ... to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d). The obligation to bargain in good faith "does not compel either party to agree to a proposal or require the making of a concession." *Id.* In determining whether the employer bargained in good faith, the Board may not "sit in judgment upon the substantive terms of collective bargaining agreements." *N.L.R.B. v. American Nat'l Ins. Co.*, 343 U.S. 395, 404 (1952). However, in determining good faith, the Board should examine the totality of the circumstances, including the substantive terms of proposals. *See Borden, Inc. v. N.L.R.B.*, 19 F.3d 502, 512 (10th Cir. 1994); *N.L.R.B. v. A-1 King Size Sandwiches, Inc.*, 732 F.2d 872, 874 (11th Cir. 1984). "Sometimes, especially if the parties are sophisticated, the only indicia of bad faith may be the proposals advanced and adhered to." *N.L.R.B. v. Wright Motors, Inc.*, 603 F.2d

604, 609 (7th Cir. 1979).

The Company claims the Board's decision is incorrect because it found bad faith without identifying which of the Company's contract proposals were illegal or explaining why they were illegal. The Company, however, misunderstands the Board's decision. The Board's decision was not based on the illegality of any particular proposal. Instead, the Board held the Company violated the Act "by insisting as a price for any collective-bargaining agreement that its employees give up their statutory rights to be properly represented by the Union." In other words, the Company's rigid adherence throughout negotiations to a battery of contract proposals undermining "the Union's ability to function as the employees' bargaining representative" demonstrated it "could not seriously have expected meaningful collective bargaining."[3] The Board did not err in inferring bad faith

_____

[3] The Board's inference of bad faith is further supported by its finding that the Company's "conduct away from the bargaining table confirms that it was focused more intently on eliminating its bargaining obligation to the Union than on successfully negotiating a collective-bargaining agreement." The Company sent an e-mail to its employees during the bargaining period aimed at obtaining "a decertification election to remove the Union as collective-bargaining representative." The administrative law judge held this was unlawful interference with the employees' rights under the National Labor Relations Act. *See* 29 U.S.C. § 158(a)(1). The Company did not challenge the judge's findings in its petition to the National Labor Relations Board or in its opening brief before this court. The Company argues for the first time in its reply brief that the e-mail was sent after bargaining ended and is not "evidence of improper conduct." The Company, however, waived this issue by not raising it sooner. *See* 29 U.S.C.

from this conduct.[4]  *See Capitol Steel & Iron Co. v. N.L.R.B.*, 89 F.3d 692, 696

(10th Cir. 1996) (explaining an employer may violate its duty to bargain in good

faith if its conduct "reflects a design to undermine the union in its role as the

employees' sole bargaining representative"); *Borden, Inc.,* 19 F.3d at 512 (noting

"rigid adherence to disadvantageous proposals *may* provide a basis for inferring

bad faith" (emphasis in original)); *Colorado-Ute Elec. Ass'n. v. N.L.R.B.*, 939

F.2d 1392, 1405 (10th Cir. 1991) (noting that maintaining a "rigid position

throughout negotiations ... could potentially be the basis for a finding of bad

faith" (quotation marks omitted)).


Public Service Company also argues the Board's decision "nullifie[s]" the

_____

§ 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."); *Woelke & Romero Framing, Inc. v. N.L.R.B.*, 456 U.S. 645, 666 (1982) ("[T]he Court of Appeals lacks jurisdiction to review objections that were not urged before the Board."); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (holding appellant waived an issue by failing to raise it in his opening brief).


[4]  Of course, the Board's inference of bad faith from rigid adherence throughout negotiations to contract proposals undermining a union's representational function must be supported by substantial evidence.  *See* 29 U.S.C. § 160(e).  Here, the Company makes a half-hearted argument suggesting the Board's inference is not supported by substantial evidence.  After reviewing the argument and the evidence, we conclude the Board's decision is supported by substantial evidence.

Supreme Court's decision in *N.L.R.B. v. American National Insurance Co.*, and our decision in *Colorado-Ute Electric Ass'n v. N.L.R.B.* We fail to see, and the Company does not explain, how the Board's decision conflicts with these decisions. The Supreme Court held in *American National* that bargaining for a management function clause is not, "per se, an unfair labor practice." *American Nat'l Ins. Co.*, 343 U.S. at 409. In keeping with *American National*, the Board in this case did not condemn Public Service Company merely for bargaining for certain proposals. Instead, it held the Company bargained in bad faith by insisting throughout negotiations on contract proposals undermining "the Union's ability to function as the employees' bargaining representative." In *Colorado-Ute*, we held an employer may lawfully implement a management function clause upon reaching a valid impasse in bargaining. *See Colorado-Ute*, 939 F.2d at 1404-05. Our decision was informed by the Board's findings the employer negotiated in good faith and reached a valid impasse in bargaining. *Id*. at 1405. In contrast, the Board in this case found the Company bargained in bad faith by insisting throughout negotiations on proposals undermining the Union's representational function. A valid impasse in bargaining was never reached. Therefore, Public Service Company could not lawfully implement its final contract offer. *See Newspaper Printing Corp. v. N.L.R.B.*, 625 F.2d 956, 966 (10th Cir. 1980). The Board's decision finding the Company bargained in bad

faith is supported by the evidence and case law.

**Alleged Bad-Faith Conduct by the Union**

Public Service Company argues the administrative law judge erred in failing to find the Union bargained in bad faith. The Company claims there is "undisputed" evidence the Union employed bargaining strategies found in a manual entitled *The Inside Game*. The manual is a forty-one-page publication instructing employees on strategies to "agitate and pressure the employer prior to and during the bargaining process." The Company claims the Union, following the strategies outlined in the manual, illegally "avoid[ed] an impasse," "hurt production," and refused "to consider any of [the Company's] ... different proposals."

The administrative law judge did not find the Union bargained in bad faith because there was "insufficient evidence that the Union initiated the course of conduct the [Company] advances." The judge found it "unnecessary to reach the 'manual' issues raised by the [Company] because [there was not] a sufficient evidentiary nexus between the manual and the conduct of the Union on this record." Although it made no separate findings on this issue, the National Labor Relations Board affirmed the judge's "rulings, findings, and conclusions." The

judge's findings as affirmed by the Board are conclusive "if supported by substantial evidence on the record considered as a whole." *See* 29 U.S.C. § 160(e). We conclude there is substantial evidence in the record supporting the judge's findings.

The Company claims Union employees, after months of training on strategies in *The Inside Game*, bargained in bad faith by refusing to consider its proposals yet trying to avoid a technical impasse.[5] Then, according to the Company, Union members deliberately slowed production in an effort to force the Company to present proposals more favorable to the Union. The Company points to discussions at Union meetings in support of its argument.

After reviewing minutes from Union meetings and other evidence, we conclude the administrative law judge and the Board correctly found the Union did not bargain in bad faith. Although *The Inside Game* was mentioned by name at some Union meetings, actual strategies advocated in the manual were discussed

---

[5] The Company apparently believes the alleged Union misconduct "excused" the Company's bad faith conduct. We need not reach the merit of this belief because we conclude the Union did not bargain in bad faith.

at only one Union meeting.[6]  At this meeting, a Union representative urged

employees to "play the 'Inside Game.'  Where we abide by <u>every</u> rule and perform

<u>every</u> check called for by company and OSHA safety rules."  (Emphasis in

original.)  The representative then urged employees "to continue to work, work

safely, and be patient."  The fact that the Union instructed its members to follow

all safety rules is not enough to demonstrate the Union's bad faith.

The Company also claims "Union training minutes openly brag about the

[Union's] slowing of [the Company's] production" as suggested by *The Inside*

*Game*.  We find nothing in Union minutes supporting the Company's claim.

Although the Company does point to a study indicating employee response to call-

outs was down fifty percent in 1997,[7] this study concerns employee conduct after

negotiations had ended; it does not shed any light on Union conduct during

negotiations.  The study also indicates call-out response was down only at one of

the Company's seven or eight locations.  The study does not suggest the Company

---

[6]  There is also conflicting testimony as to whether a Union representative admitted using *The Inside Game*.  Even assuming the representative made such an admission, however, the Company presented no evidence linking this admitted use with illegal Union activity.

[7]  A call-out is a call made to employees to restore service after normal working hours.  Employee response to call-outs is a condition of employment.

as a whole was suffering a decreased call-out response. Finally, the Company failed to link the decreased call-out response to any concerted action by Union members.

In sum, the Company has not demonstrated the Union implemented any of the strategies advocated in *The Inside Game*. Consequently, we express no opinion on the legality of *The Inside Game* strategies. We simply agree with the administrative law judge and the Board. The evidence in this case does not demonstrate the Union bargained in bad faith.

**Unilateral Implementation of Final Contract Offer**

Public Service company argues the National Labor Relations Board erred in adopting the administrative law judges's finding that the Company illegally implemented portions of its final contract offer. The Company argues the judge incorrectly held the Company was not entitled to implement portions of the offer because it had not bargained in good faith. The Company further claims an economic exigency justified its implementation portions of the offer. We will address each of these arguments in turn.

A. Impasse

The National Labor Relations Board affirmed the administrative law judge's finding that the Company's implementation of portions of the offer was unlawful because "the parties were not at a valid impasse in bargaining." The Company believes this finding is incorrect because "[t]he record clearly shows that the parties were realistically at impasse."

An employer may lawfully "implement all or part of its final offer with respect to a mandatory subject of bargaining upon an impasse in negotiations." *Borden, Inc.*, 19 F.3d at 512. An impasse in negotiations "occurs where the parties, after good-faith negotiations, have exhausted all prospects of concluding an agreement." *Id.* at 512. An impasse "presupposes a reasonable effort at goodfaith bargaining." *N.L.R.B. v. Big Three Indus., Inc.*, 497 F.2d 43, 48 (5th Cir. 1974). The Board's conclusion as to whether impasse did or did not exist will be upheld if supported by substantial evidence. *See Borden, Inc.*, 19 F.3d at 513.

Here, the Company failed to show they were at a valid impasse because the Company did not satisfy the good faith precondition to impasse. We have already concluded the Company bargained in bad faith by its rigid adherence throughout

negotiations to proposals undermining the Union's representational function. It was the Company's bad faith adherence to these proposals, and not legitimate exhaustion of all possibilities of reaching an agreement, that caused a deadlock in negotiations. The Board correctly adopted the judge's finding that the Company and the Union never reached a valid impasse in bargaining.

Public Service Company argues the administrative law judge found the Company "did not engage in bad faith bargaining." Therefore, the Company claims it reached a valid impasse in bargaining and lawfully implemented its final contract offer. The Company points to a portion of the administrative law judge's order stating the Company did not engage in "surface bargaining" and the Company's "bargaining, while perhaps 'hard,' does not rise to the level of inherently unlawful or constitute independent evidence of bad faith." The Company misconstrues the judge's order. The judge did not find the Company bargained in good faith. The judge simply found the Company's rejection "of the status quo" and its resistance to "carryover ... language from the previous contract" was not "surface bargaining," "bargaining in violation of the Act," "inherently unlawful," or "independent evidence of bad faith." The judge went on to find, however, the Company bargained in bad faith by its "insistence and dogged defense of ... proposals ... preempt[ing] the Union's representational

-14-

function." It was this bad faith conduct, and not rejection of the status quo or language from the previous contract, that created a deadlock in negotiations and prevented a valid impasse in bargaining. Since there was no valid impasse, the Company was not justified in implementing portions of its final contract offer.

B. Economic Exigencies

The Company also argues implementation of portions of the final contract offer was justified by an economic exigency. Public Service Company claims it was required by law "to submit a correct and appropriate fiscal operating budget to the Oklahoma Corporation Commission." The Company does not claim this requirement was "sufficient to excuse bargaining altogether" but instead claims it was an economic exigency that could not "await final agreement or impasse on the collective bargaining agreement as a whole."

As a general rule, an employer must bargain in good faith to an impasse on the entire agreement prior to unilaterally implementing its final contract offer. *See N.L.R.B. v. RBE Elecs. of S.D., Inc.*, 320 NLRB 80, 81 (1995). The National Labor Relations Board recognizes an exception to this general rule where an economic exigency compels prompt action. *Id.* at 82. Under this exception, an employer satisfies its duty to bargain by giving the union "adequate notice and an

opportunity to bargain over the changes it proposes to respond to the exigency and by bargaining to impasse over the particular matter." *Id*. "[T]he exception is limited only to those exigencies in which time is of the essence." *Id*. The employer must demonstrate "the exigency was caused by external events, was beyond the employer's control, or was not reasonably foreseeable." *Id*.

We conclude the Company did not give the Union adequate notice of the alleged economic exigency and failed to bargain to impasse over the contract changes it proposed to respond to the alleged exigency. In addition, it was the Company's bad faith conduct, and not the budget requirement itself, that created the exigency. The parties began negotiating a new contract almost six months before the Company felt "serious business needs" required implementation of its proposals. This was more than enough time for the Company to notify the Union of its business needs, specifically identify these needs, and perhaps negotiate a resolution satisfying these needs. Instead, more than four months into negotiations, the Company finally told the Union it had "serious business needs" and would "take whatever action ... necessary," including implementation, to satisfy these needs. The Company did not identify the nature of these business needs and failed to give the Union an opportunity to negotiate on proposals it felt were necessary to satisfy these needs. The Company simply negotiated in bad

faith, thereby frustrating agreement and wasting valuable negotiating time, until there was no longer time to adequately address the proposals necessary to submit a budget to the Oklahoma Corporation Commission. Under these circumstances, the Company cannot justify its implementation under the economic exigency exception.

**Due Process**

Public Service Company argues the allegations against it were not detailed enough to enable it "to understand the alleged offense and raise a proper defense." The Company claims it "had trouble understanding" the complaint because it did not identify which proposals were illegal. The Company also claims "it could not successfully defend against such a vague and unfathomable complaint." Although the Company fails to cite any law in support of its argument, we assume it is arguing the Board's decision violates due process. *See Facet Enters., Inc. v. N.L.R.B.*, 907 F.2d 963, 972 (10th Cir. 1990). This is a question of law subject to de novo review. *See id.* at 970. Due process prohibits enforcement of the Board's decision if it is based on a violation "neither charged in the complaint nor litigated at the hearing." *N.L.R.B. v. I.W.G., Inc.*, 144 F.3d 685, 689 (10th Cir. 1998). The Board may decide a material issue fairly tried by the parties, however, even if not specifically pled in the complaint. *See Facet*

*Enters., Inc.*, 907 F.2d at 972. Due process is not violated where "it is clear that the respondent understood the issue and was afforded a full opportunity to justify its actions." *Id*. (quotation marks, alterations, & citations omitted).

After carefully reviewing the record, we conclude the Board's decision does not violate due process. Public Service Company had sufficient notice of the charges against it and an opportunity to defend against them. The charges made in the complaint and further clarified during the hearing were not "vague and unfathomable." The General Counsel for the National Labor Relations Board repeatedly explained its theory of the case: the Company bargained in bad faith because it "slavishly adhered" to contract proposals "which centered on not dealing with the Union .... It never altered its position. It kept on that track. That track of not having to deal with the Union."The Company apparently understood the General Counsel's theory, acknowledging the Board may examine "whether or not [boulwarism][8] has occurred," and find bad faith if the Company "obviously offered [regressive proposals] for the purpose of frustrating agreement." The Company argued in defense it "tried to build in a process that

---

[8] Boulwarism is "[a] bargaining tactic in which an employer ... make[s] a firm settlement offer to a union on a take-it-or-leave-it basis, so that there is no real negotiation." Black's Law Dictionary 180 (7th ed. 1999).

includes the Union ... and that would include agreement"; however, the Company felt insistence on its contract proposals was justified because, in the face of deregulation, "[w]e believed and we still believe that the sky is falling, and that if we don't make changes and have the ability to make changes, we won't survive." The Board, agreeing with General Counsel, found the Company negotiated in bad faith "by insisting as a price for any collective-bargaining agreement that its employees give up their statutory rights to be properly represented by the Union." Although the Company may disagree with the Board's decision, the Board's decision was properly based on "a material issue fairly tried by the parties." *See Facet Enters.*, 907 F.2d at 972.

## Remedy

The Company also argues the Board's "remedy is unenforceable and violative of existing Supreme Court and circuit law." The Board's power to fashion a remedy is "a broad, discretionary one, subject to limited judicial review." *Fibreboard Paper Prods. Corp. v. N.L.R.B.*, 379 U.S. 203, 216 (1964). The Board's remedy should not be disturbed unless it is a patent attempt to achieve ends inconsistent with the policies of the National Labor Relations Act. *See id.* at 215.

The Company claims the Board's order "includes the unpled and unlitigated requirement that [the Company] must include certain 'representational language' which clearly includes non-employee subcontractors." The Company argues the order illegally requires it to "include non-employees in its [bargaining] unit." We reject the Company's argument. We assume the Company is referring to language in the order requiring it to "bargain collectively and in good faith" with the bargaining unit; the order defines the bargaining unit as "[a]ll outside construction and maintenance employees who work on the [Company's] property and power generation employees in operations and in construction and maintenance, excluding clerical employees, supervisory employees and guards." This is the same bargaining unit the Company has dealt with for over fifty years. The General Counsel for the Board alleged in its consolidated complaint that this was the "appropriate" bargaining unit. The Company did not deny this allegation but admitted in its answer "the parties have agreed upon an appropriate unit for bargaining." The administrative law judge also identified in its decision the relevant bargaining unit as the one set forth above. The Company did not dispute this definition before the judge or the Board. Consequently, even if the Company did not admit in its answer this was the appropriate bargaining unit, it waived this argument by not raising it before the judge or the Board. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992). Accordingly, we affirm the

Board's order.[9]

For the reasons stated above, we **DENY** Public Service Company's petition for review. We **GRANT** the National Labor Relation Board's cross-application for enforcement.

---

[9] The Company's remaining arguments as to why the Board's order is "unenforceable" merely restate arguments we already considered and denied in previous sections of this opinion. There is no need to address these arguments again.