FILED
United States Court of Appeals
Tenth Circuit

December 6, 2019

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

EUGENE SCALIA, Secretary of Labor,[*]

    Plaintiff - Appellee,

v.

PARAGON CONTRACTORS
CORPORATION; BRIAN JESSOP,
individually,

    Defendants - Appellants,

PAR 2 CONTRACTORS, LLC,

    Intervenor Defendant - Appellant,

and

JAMES JESSOP, individually,

    Defendant,[**]

Nos. 18-4147 & 18-4148
(D.C. No. 2:06-CV-00700-TC)
(D. Utah)

_____

_____

[*] Pursuant to Fed. R. App. P. 43(c)(2), Eugene Scalia is automatically substituted for Thomas E. Perez as Plaintiff-Appellee.

[**] In a Memorandum Decision Including Findings of Fact and Conclusions of Law and Contempt Order issued September 10, 2018, the district court concluded that Paragon Contractors Corporation; Brian Jessop; Par 2 Contractors, LLC; Don Jessop, as Par 2's agent; and Jacob Barlow, as Par 2's agent, were in civil contempt of the district court's 2007 injunction. However, Don Jessop and Jacob Barlow were not parties to the underlying district court proceedings; they were found to be in contempt only in their capacities as agents of Par 2, which was a defendant below. Accordingly, Don Jessop and Jacob Barlow are not proper parties to these appeals, and the Clerk is directed to remove them from the caption in 18-4147.

**ORDER AND JUDGMENT**[***]
_____

Before **LUCERO**, **HARTZ**, and **MATHESON**, Circuit Judges.
_____

Paragon Contractors Corporation ("Paragon"), Brian Jessop, and Par 2 Contractors, LLC ("Par 2") appeal a contempt order issued by the district court. Exercising jurisdiction under 28 U.S.C. § 1291, see O'Connor v. Midwest Pipe Fabrications, Inc., 972 F.2d 1204, 1208 (10th Cir. 1992), we affirm.

**I**

In 2007, the district court entered a permanent injunction against Paragon, Brian Jessop, James Jessop, and "their officers, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice" of the injunction, enjoining them from employing minors "under conditions constituting oppressive child labor," as defined in the Fair Labor Standards Act ("FLSA"). Several years later, the Department of Labor ("DOL") began investigating additional child labor violations by Paragon and Brian Jessop. Although Paragon was primarily a construction company, DOL suspected it was using children to harvest pecans. In 2016, the district court found Paragon and Brian Jessop in contempt of the 2007 injunction. The court set up a claims process through which children employed by Paragon between 2008 and 2013 could seek back wages

---

[***] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

related to the pecan harvest. It also appointed a special master to ensure Paragon's compliance with the injunction. On appeal, we affirmed the contempt finding and back-wages sanction but reversed the appointment of a special master. Acosta v. Paragon Contractors Corp., 884 F.3d 1225, 1229 (10th Cir. 2018).

Separate from the pecan-harvesting investigation, DOL began to suspect that Par 2 was taking over Paragon's operations in an effort to evade the 2007 injunction. In September 2017, DOL filed a Motion for Order to Show Cause, alleging that Paragon had simply changed its name to Par 2 and violated the injunction by employing minors in hazardous construction work in 2016. DOL sought joinder of Par 2, a finding of contempt, and various sanctions. Par 2 filed a motion to intervene, which the district court granted. The court ordered the parties to provide their direct examination testimony by declaration, with declarants to appear for cross-examination at an evidentiary hearing. After the evidentiary hearing, the district court found the following facts.

Brian Jessop is the owner and president of Paragon, a construction company that engaged in rough carpentry and framing jobs. He was Paragon's estimator for projects and the primary point of contact with other contractors. Don Jessop is Brian Jessop's brother and worked as a Paragon foreman. Jacob Barlow is Brian Jessop's nephew. He did timekeeping, payroll, and accounting for Paragon, using the title "Office Manager." Paragon had $5 to $7 million in annual revenues from 2010 to 2012. But by 2016, the company had only a "job or two," and by 2017 had ceased operations and had no employees.

3

In December 2013, in the midst of a subpoena dispute related to the pecan harvest, Don Jessop filed articles of incorporation for Par 2. The company began construction framing work similar to that done by Paragon in 2014. Par 2 had just over $1 million in revenues in 2014, which increased to $8 million by 2016. Initially, Par 2 used Paragon's phone number and email address to communicate with contractors. The entities operated out of the same building through 2017. Many of Par 2's employees—at least nineteen of them—had previously worked at Paragon.

Paragon's management team took on analogous roles at Par 2. Don Jessop, who was a Paragon foreman, was listed as the sole owner and member of Par 2 on paperwork filed with the Utah Department of Commerce. He continued to act as foreman for the new company. Jacob Barlow, Paragon's officer manager, is also the office manager for Par 2. Similarly, Brian Jessop continued to work as an estimator and primary contact person for contractors at Par 2. However, Brian Jessop and Don Jessop attempted to conceal Brian Jessop's involvement in Par 2 from DOL, both claiming he was not substantially involved in the company. Brian Jessop stated that he was merely helping with Par 2 for a few hours each evening. But emails show he engaged in day-to-day management activities during business hours and signed official safety records as a supervisor of Par 2. Moreover, Par 2 produced documents to DOL from which Brian Jessop's name had been removed. DOL obtained Par 2 bid documents from a contractor that included a salutation from Brian Jessop and revisions that were noted as "per phone call with Brian Jessop." When the same documents were produced by Par 2, Brian Jessop's name had been deleted.

4

Paragon and Par 2 representatives and employees gave inconsistent responses about which of the two companies they worked for. When questioned on a job site, Par 2 employees identified themselves as working for Paragon. In response to a request for safety records, Par 2 sent Occupational Safety and Health Administration forms 300A and 300 with "Paragon Contractors Corp" or "Paragon Contractors Corporation" as the establishment name. At one point, a contractor sent an email to Par 2 noting that "you[r] company name changed" from Paragon and requesting an updated W-9 form. Jacob Barlow sent an updated W-9 for Par 2.

In November 2016, the Arizona Department of Occupational Safety and Health and DOL's Wage and Hour Division inspected a Par 2 job site in Arizona. DOL determined two minors were engaged in work on the roof using nail guns. It assessed a civil monetary penalty, which Par 2 paid without contest.

The district court issued an order finding Paragon, Brian Jessop, Par 2, and Don Jessop and Jacob Barlow (as Par 2's agents) in contempt of the 2007 injunction. It found defendants' testimony not credible, citing numerous inconsistencies and evasions. The court ordered defendants to provide a copy of the 2007 injunction to all employees, contractors, and other entities with whom they contracted in the last ten years; to place $50,000 into a fund to provide FLSA training; and to pay attorneys' fees and costs. Paragon and Brian Jessop filed a timely notice of appeal, as did Par 2. We consolidated the appeals.

After briefing in this appeal was complete, a ruling was issued on the issue of back wages for the pecan-harvesting violations. The district court determined

5

Paragon and Brian Jessop owe $1,012,960.90 to the minors they employed and ordered them to pay $812,960.90 into the fund for compensating the children for unpaid wages. That order is the subject of a separate appeal. In addition, DOL is currently seeking civil penalties against Paragon and Brian Jessop in an administrative action, DOL case 2015-CLA-00008, related to the pecan-harvesting violations.

## II

We review a district court's civil contempt ruling for abuse of discretion. Reliance Ins. v. Mast Constr. Co., 84 F.3d 372, 375 (10th Cir. 1996). "A district court has broad discretion in using its contempt power to require adherence to court orders. In determining whether the court committed legal error by violating limits on such power, our review is de novo." O'Connor, 972 F.2d at 1209 (quotation omitted). We review findings of fact for clear error. See Reliance, 84 F.3d at 375.

## A

Par 2 contends that the district court violated its due process rights by finding it to be a successor to Paragon in a contempt proceeding. Specifically, Par 2 argues it cannot be subjected to liability for back wages from the pecan-harvest order and civil penalties from the administrative action absent a complaint, discovery, and a jury trial. Whether adequate due process protections have been afforded is generally "a question of law subject to de novo review." Pub. Serv. Co. of Okla. v. N.L.R.B., 318 F.3d 1173, 1182 (10th Cir. 2003). However, we do not reach the merits of Par 2's due process argument because we conclude the argument is premature.

6

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (quotation omitted). As Par 2 itself frames its argument, its being deemed a successor to Paragon in a contempt proceeding was improper because Par 2 "may be held liable for millions of dollars in penalties and claims being pursued against Paragon." (emphasis added).[1] It is uncertain whether Par 2 will in fact be held liable in the manner it predicts. Par 2's due process argument as to the back pay award would become ripe only if the following events occur: the award is affirmed by this court, DOL seeks to hold Par 2 responsible for the award, the district court holds Par 2 liable, and the court does so based on the findings in this case without affording Par 2 additional process. Par 2's potential of being held liable for civil penalties is even more attenuated. It appears that civil penalties have not yet been assessed at the administrative level, and, if they are, the same chain of events would need to occur.

---

[1] Par 2's argument appears to rest on the mistaken assumption that, because the district court characterized Par 2 as a successor to Paragon for purposes of binding it to the 2007 injunction, Par 2 is a successor to Paragon in every context. Not so. As the Supreme Court has recognized, asking whether a company "is a 'successor' is simply not meaningful in the abstract" because "[a] new employer . . . may be a successor for some purposes and not for others." Howard Johnson Co. v. Detroit Local Joint Exec. Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL-CIO, 417 U.S. 249, 262 n.9 (1974). Whether a successor is liable for a specific sum depends on "the facts of each case and the particular legal obligation which is at issue." Id.

7

If Par 2 is in fact held liable for back pay and civil penalties, it will have the opportunity to challenge the process provided to it during those proceedings.[2] But Par 2 may not be held liable at all. Even if it is, we do not yet know what process will be afforded to Par 2 in those proceedings. Accordingly, we conclude Par 2's due process claim is premature. And because Par 2 does not advance any particular argument in its Opening Brief indicating the process provided to it was insufficient with respect to the sanctions actually imposed by the district court, any such argument is waived. See Coleman v. B-G Maint. Mgmt. of Colo., Inc., 108 F.3d 1199, 1205 (10th Cir. 1997). Further, defendants failed to raise any due process argument before the district court, providing an independent basis to decline consideration of this issue. See Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc., 413 F.3d 1163, 1167 (10th Cir. 2005) (arguments not raised in district court are waived on appeal).

**B**

Defendants also challenge the district court's application of the contempt order to Par 2, Don Jessop, and Jacob Barlow. In general, a party may be held in civil contempt for violating an injunction if the plaintiff proves "by clear and convincing

---

[2] We note that the primary case upon which Par 2 relies in its Opening Brief, a decision of the Utah Supreme Court, considered the due process claims at issue only after post-judgment collection procedures were complete. See Brigham Young Univ. v. Tremco Consultants, Inc., 156 P.3d 782, 785 (Utah 2007). Federal courts have similarly considered whether post-judgment efforts to collect from a party not bound by an original judgment followed appropriate procedures. See, e.g., Thomas, Head & Greisen Emps. Tr. v. Buster, 95 F.3d 1449, 1452-53 (9th Cir. 1996).

evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." Reliance, 159 F.3d at 1315. On appeal, defendants do not contest that the injunction prohibited Brian Jessop, Paragon, their agents, and those in "active concert or participation" with them, from violating the provisions of FLSA addressing oppressive child labor. Nor do they challenge the district court's findings that Par 2 in fact violated those provisions. The only question before us is whether Par 2 and its agents were appropriately bound by the injunction.

An injunction binds the parties, "the parties' officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation with" them. Fed. R. Civ. P. 65(d)(2). However, such individuals must "receive actual notice" of the injunction to be bound by it. Id. As the Supreme Court long ago recognized, such a rule is necessary so "that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." Regal Knitwear Co. v. N.L.R.B., 324 U.S. 9, 14 (1945). If entities or individuals are the "instrumentalities through which [a] defendant seeks to evade an order or . . . come within the description of persons in active concert or participation with [a defendant] in the violation of an injunction," then "they are brought within scope of contempt proceedings." Id. Accordingly, contempt orders are binding on entities that "operate as merely a disguised continuance of the old employer." Id. (quotations omitted). This analysis "depends on an appraisal of [the entity's] relations and behavior." Id. at 15.

9

Defendants argue Par 2, Don Jessop, and Jacob Barlow were not within the scope of the 2007 injunction. Don Jessop and Jacob Barlow were employees of Paragon and thus included under Rule 65(d)(2)(B). As to Par 2, the district court concluded that it was the instrumentality through which Paragon, Brian Jessop, and James Jessop sought to evade the 2007 injunction and that it acted in active concert or participation with them. We do not discern any error in the district court's conclusions. To the contrary, we agree that the record clearly and convincingly establishes Par 2 operated as a disguised continuance of Paragon. As the facts described above demonstrate, Par 2 simply picked up Paragon's operations. Particularly noteworthy is evidence showing that a contractor believed Paragon had simply changed its name to Par 2. It is also clear that the purpose of this transition was to evade compliance with the 2007 injunction. Don Jessop incorporated Par 2 while Paragon was involved in a subpoena dispute with DOL related to the 2007 injunction. Brian Jessop and Don Jessop attempted to conceal Brian Jessop's involvement with Par 2. And Par 2 altered documents submitted to DOL to remove Brian Jessop's name.[3]

---

[3] Defendants object to the district court's application of the "MacMillan factors," a set of criteria we have used in determining whether a Title VII order binds a successor, see Trujillo v. Longhorn Mfg. Co., 694 F.2d 221, 225 (10th Cir. 1982). Because we conclude Par 2 falls within the scope of the 2007 injunction under Rule 65(d), we do not need to address its application of those factors. See Regal Knitwear, 324 U.S. at 14 (holding "successors and assigns" are liable for contempt if they are properly within the scope of the injunction under Rule 65(d)). Although the test under Rule 65(d) overlaps to some degree with the MacMillan analysis, we do not decide whether Par 2 is a successor to Paragon under the MacMillan factors.

Turning to whether the parties had notice of the injunction, we agree with the district court that Par 2 had actual notice. Par 2, like any corporate entity, "acquire[s] knowledge only through its officers and agents." Bergeson v. Life Ins. Corp. of Am., 265 F.2d 227, 232 (10th Cir. 1959). Brian Jessop, an agent of Par 2, was a party bound by the injunction and had actual knowledge of it. With respect to Don Jessop and Jacob Barlow, we cannot say the district court clearly erred in finding they had actual notice of the 2007 injunction. As the district court noted, Don Jessop was a director at Paragon when the injunction was entered and facilitated the transfer of operations from Paragon to Par 2. Jacob Barlow served as Paragon's office manager and assisted in gathering documents for the DOL's subpoena in 2013, which was related to the injunction. The court permissibly found incredible the men's denials of knowledge of the injunction.

## III

**AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge