PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 5/17/96** TENTH CIRCUIT

| | |
|---|---|
| RELIANCE INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) |
| Plaintiff-Appellant, | ) ) ) |
| v. | ) ) No. 95-4054 |
| MAST CONSTRUCTION COMPANY, a corporation; MAST INDUSTRIAL, INC., a corporation; RONALD EARL MAST, LINDA M. MAST, individually and as trustees of the Ronald E. Mast Living Family Trust, aka Aremeco Management Co.; HARDWARE SPECIALTIES, INC., a corporation; ROGER J. MAST; MARIE G. MAST; CHRISTOPHER MAST, individuals, | ) ) ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| FIRST SECURITY BANK OF UTAH, N.A., | ) ) |
| Defendant-Appellee. | ) |

Appeal from the United States District Court
for the District of Utah
(No. 88-CV-947-S)

Andrew M. Morse (David W. Slaughter and Camille N. Johnson on the brief), of Snow, Christensen & Martineau, of Salt Lake City, Utah, for the appellant.

James S. Jardine (Steven H. Gunn and Keith A. Kelly with him on the brief), of Ray, Quinney & Nebeker, of Salt Lake City, Utah, for the appellees.

Before BALDOCK, EBEL, and BRISCOE, Circuit Judges.

BRISCOE, Circuit Judge.

Plaintiff Reliance Insurance Company (Reliance) appeals from the district court's order granting summary judgment in favor of defendant First Security Bank of Utah, N.A. (First Security) in a contempt proceeding instituted by Reliance. We affirm in part, reverse in part, and remand.

During a period prior to and including 1988, Reliance furnished several contractor performance and payment bonds for Mast Construction Company (Mast) in connection with various public construction projects in California, Utah, and Nevada, on which Mast served as general contractor. In early October 1988, following increasing numbers of claims upon its bonds by unpaid suppliers and subcontractors, and based upon correspondence and other information it received indicating a potential default on at least one of the bonded construction projects, Reliance sent representatives to meet with Ronald Mast, president of Mast. Reliance representatives sought details of Mast's financial standing, plans for completion of the bonded projects and payment of project-related obligations, and assurances of its willingness and ability to hold Reliance harmless from any bond loss or liability.

On October 17, 1988, having failed to receive any assurances of cooperation from Mast, and anticipating substantial losses under its bonds, Reliance filed an indemnity action against Mast and its indemnitors, Ronald Mast and Linda Mast (Mast defendants). On that same date, Reliance sought and obtained, ex parte, a temporary restraining order enjoining the transfer of funds and other assets of the named defendants "other than in the normal course of business." Appellant's append. I at 133. A copy of the temporary restraining order, with a copy of the summons and complaint, was hand delivered to Mast's counsel that same day.

2

A copy of the temporary restraining order was allegedly hand delivered to First Security on October 19, 1988, and received through Larry Gwynn, branch manager at First Security's First South Branch. As of October 19, 1988, Mast held more than $1.8 million on account at First Security. According to Reliance, these funds represented the balance of approximately $2.37 million in project contract payments that Mast deposited in August 1988.

On the morning of October 20, 1988, Ronald Mast appeared at First Security's Ivy Place Branch and withdrew or transferred the entire balance of Mast's account. In particular, he transferred approximately $1,358,104.20 to new accounts at First Security in the name of REMCO Construction, Inc., and U.S. General, Inc., and withdrew approximately $500,000 in cashier's checks payable to REMCO. Two of the cashier's checks, totaling $200,000, were subsequently deposited at another bank and used to purchase gold coins. The remaining checks were used a week later to establish additional accounts at First Security.

Mast also withdrew $2,500 that same day from a "City Wide Leasing" account at First Security's West Jordan Branch, and Linda Mast withdrew $2,500 from a "Ronald E. Mast Family Savings Account" at First Security's 72nd South Branch.

On October 21, 1988, Reliance sought and received an amended temporary restraining order imposing a judicial lien upon all assets and property owned by Mast, Ronald Mast, and Linda Mast, and "all property in which said defendants have or maintain an interest," including "accounts of deposit." Appellant's append. I at 146. In response to an observation from another bank's counsel that reference in the October 17 temporary restraining order to transactions "other than in the ordinary course" provided an

3

ambiguous standard for compliance and enforcement, the amended order directed that "none of such funds, assets or other property shall be paid, sold, transferred, liened or encumbered without prior Court approval." Id. According to its terms, the amended order purported to be "binding upon all financial institutions and . . . their officers, agents, employees and attorneys . . . who receive actual notice of this Order, by personal service by publication or otherwise." Id. The October 21 temporary restraining order was to expire, according to its terms, on October 31, 1988, at 1:30 p.m. The order was subsequently extended by a series of extension orders.

Reliance alleges that on October 21, 1988, it attempted to hand deliver a copy of the amended order to First Security's First South Branch, but a bank officer refused service and directed the representative of Reliance to deliver the document to First Security's Central Operations office in Salt Lake City. Reliance alleges that, because of the time of day, delivery was delayed until the next business day, October 24, 1988. First Security contends the amended order was not delivered until sometime between October 28 and October 31, 1988.

On October 25, 1988, Ronald Mast made arrangements with Kraig Murdock, a branch manager of First Security, to secure a line of credit loan for REMCO. On that same date, Christopher Mast, son of Ronald Mast, purported to be the vice president of REMCO and signed loan documents at First Security's Sugarhouse Branch for the arranged $300,000 line of credit. Although Murdock was aware of the October 17 temporary restraining order, he waited until after Christopher Mast left to inform Lynn Goodale, a loan processor, what had transpired. In turn, Goodale informed First Security's area manager and counsel of the situation. Goodale also telephoned the district

court and was advised the temporary restraining order had been extended an additional ten days.

On or about October 26, 1988, Murdock telephoned Ronald Mast to inform him that, in light of the temporary restraining order, First Security had decided not to proceed with the REMCO line of credit loan. In response, Ronald Mast informed Murdock he intended to close his accounts at First Security. On that same day, Ronald Mast withdrew or transferred all of his remaining funds at First Security. Between October 28 and November 9, 1988, he used portions of the withdrawn funds to open additional accounts at First Security and to obtain numerous cashier's checks. According to Reliance, all of these funds were eventually converted to cash or precious metals.

On December 22, 1988, the district court heard Reliance's motion for a preliminary injunction prohibiting the use or transfer of the assets. At that time, the court (1) terminated the October 17 and October 21 temporary restraining orders; (2) noted that Reliance had an adequate remedy at law; and (3) noted that the proposed preliminary injunction order was overly broad. Nevertheless, the court enjoined Ronald Mast from making fraudulent conveyances or hiding assets from creditors.

According to Reliance, it first learned of the accounts at First Security, as well as the numerous transfers and withdrawals from those accounts, in May 1989. On May 17, 1989, at the request of Reliance, the district court issued a written order (1) appointing a temporary receiver for all property and records of Mast; and (2) enjoining Mast, Ronald Mast, and Linda Mast from "conveying, selling, trading, transferring, secreting, [or] encumbering their assets, except as required for payment of necessities." Appellant's append. I at 175.

5

On April 26, 1990, Reliance entered into a stipulated settlement agreement with the Mast defendants. Under the terms of the agreement, Reliance received a $10,000,000 judgment against defendants. However, Reliance asserts the judgment was "empty and largely meaningless," due in part to the withdrawals or transfers of approximately $1.8 million in funds maintained at First Security.

In February 1991, Reliance filed suit against First Security, asserting claims of negligence, civil contempt, and civil conspiracy. In May 1992, Reliance amended its complaint to include trust-based theories of recovery, and the action was subsequently consolidated with the underlying action. On September 28, 1992, the district court dismissed Reliance's conspiracy claims and granted partial summary judgment in favor of First Security on the negligence claims. In doing so, the court held that an alleged violation of the court's temporary restraining order could not support a separate negligence claim.

On April 24, 1994, the district court issued an order granting First Security's motion for partial summary judgment on Reliance's civil contempt claims. The court concluded the two temporary restraining orders issued in October 1988 were "invalidated" on December 22, 1988, when the court rejected Reliance's request for a preliminary injunction. More specifically, the court concluded the restraining orders were invalidated at that time "because they were overbroad and because Reliance had an adequate remedy at law." Appellant's append. II at 674. Accordingly, the district court refused to impose civil contempt liability based upon an alleged violation of either order. As an additional basis for granting partial summary judgment in favor of First Security, the court concluded that First Security did not fall within the scope of persons bound by

6

restraining orders under Fed. R. Civ. P. 65(d).  Specifically, the court held that the "active concert or participation" exception for nonparties under Rule 65(d) "requires a showing of something akin to alter ego, collusion, or identity of interest," and concluded there were "no facts, or even allegations, from which it [could] be construed that the appearance of the Mast defendants was 'tantamount to the appearance' of First Security in this matter." Appellant's append. II at 674, 676.

All remaining claims were dismissed by stipulation and a final judgment and order was entered on March 3, 1995.  Reliance appeals only the summary judgment entered on its civil contempt claims.

We review a district court's adjudication of civil contempt for abuse of discretion. O'Connor v. Midwest Pipe Fabrications, 972 F.2d 1204, 1209 (10th Cir. 1992).  In doing so, however, we review the district court's conclusions of law de novo and any findings of fact for clear error.  Badger Meter v. Grinnell Corp., 13 F.3d 1145, 1154-55 (7th Cir. 1994).  Abuse of discretion is established if the district court's adjudication of the contempt proceedings is based upon an error of law or a clearly erroneous finding of fact. Id.

**Did expiration of the temporary restraining orders eliminate Reliance's right to seek a compensatory civil contempt judgment for prior violation of those temporary restraining orders?**

Generally speaking, a person who violates an injunction or temporary restraining order during its pendency is subject to a compensatory civil contempt judgment, even if the injunction or restraining order later terminates due to passage of time or mootness. See In re General Motors Corp., 61 F.3d 256, 269 n.3 (4th Cir. 1995); Coleman v. Espy, 986 F.2d 1184, 1190 (8th Cir.), cert. denied 114 S. Ct. 301 (1993); Petroleos Mexicanos

v. Crawford Enterprises, 826 F.2d 392, 400 (5th Cir. 1987); In re Keene Corp., 168 B.R. 285, 289 (Bankr. S.D.N.Y. 1994). However, the right to this remedial relief for violation of an injunction or temporary restraining order falls with an injunction or temporary restraining order "which events prove was erroneously issued, . . . and a fortiori when the injunction or restraining order was beyond the jurisdiction of the court." United States v. United Mine Workers of America, 330 U.S. 258, 295 (1947) (citations omitted). Although this language in United Mine Workers is dicta, it remains the principal authority on the effect of the reversal of an erroneous order. Stated more clearly, a claim for civil contempt must fall if the order that was disobeyed is subsequently reversed by the issuing court or the appellate court, or if its issuance exceeded the power of the issuing court. Keene, 168 B.R. at 291.

Here, First Security has not claimed, and we do not conclude, that the district court was without jurisdiction to enter either of the October restraining orders. To the contrary, the record indicates the court had jurisdiction to enter the orders and properly exercised that jurisdiction after determining the orders were necessary to maintain the status quo pending a decision on Reliance's request for a preliminary injunction.

Turning to the validity of the temporary restraining orders, we reject the notion that expiration of the orders in December 1988 rendered them "erroneous" or "invalid" for purposes of a subsequent compensatory civil contempt action. Although the district court denied Reliance's request for a preliminary injunction at that time, it made no findings with respect to the validity of the restraining orders until April 1994. Accordingly, we conclude that expiration of the temporary restraining orders in December 1988 did not terminate Reliance's right to seek a compensatory civil contempt judgment based upon

8

First Security's alleged violation of the orders, and the district court erred in holding otherwise. See Keene, 168 B.R. at 294 (termination of a properly issued temporary restraining order does not affect a party's right to compensatory civil contempt damages arising from its violation).

With respect to the October 17 restraining order, however, we find a separate basis for affirming the district court's entry of summary judgment on the contempt claim filed by Reliance. In granting summary judgment in favor of First Security, the district court found the October 17 temporary restraining order failed to meet the requirements of Rule 65(d) because it was not sufficiently definite and specific to support a civil contempt judgment. See Grace v. Center for Auto Safety, 72 F.3d 1236, 1241 (6th Cir. 1996). We agree. Therefore, we conclude the October 17 restraining order was invalid and cannot provide the basis for a compensatory civil contempt action.

As for the October 21 restraining order, the court characterized it in passing as "overbroad," but made no specific findings as to its shortcomings. Accordingly, we remand for further findings by the district court on the question of whether the order was sufficiently clear and unambiguous to inform First Security of what conduct was prohibited. See Grace, 72 F.3d at 1241.

**Can First Security, as a nonparty, be held in contempt of the district court's October 21 restraining order?**

Under Rule 65(d), a "restraining order . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, *and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise*." (Emphasis added.) Thus, although a nonparty is typically not bound by a temporary restraining order, a significant exception occurs where a

9

nonparty has actual notice of a restraining order and is in active concert or participation with a party or his privy. See 11A Charles A. Wright et al., Federal Practice and Procedure § 2956, at 337 (2d ed. 1995).

In the present case, the district court construed this "active concert or participation" exception to include only those situations where there is "a showing of something akin to alter ego, collusion, or identity of interest" between a party and a nonparty. We do not read this exception so narrowly. Although we agree that "alter ego, collusion, or identity of interest" would be sufficient to make a restraining order binding upon a nonparty who has actual notice of the order, we also conclude the exception encompasses those situations where a nonparty with actual notice aids or abets a named defendant or his privy in violating the order. See Gemco LatinoAmerica v. Seiko Time Corp., 61 F.3d 94, 98 (1st Cir. 1995); NBA Properties v. Gold, 895 F.2d 30, 33 (1st Cir. 1990) (construing nonparty exception in Rule 65(d) "as requiring that a person either be 'legally identified with' a party in the case or 'aid and abet' the party to violate a decree").

Here, the evidence indicates that First Security aided and assisted Ronald Mast in completing a fairly complicated series of fund withdrawals and transfers in apparent violation of the October 21 restraining order. Assuming that First Security had actual notice of the October 21 order at the time of those withdrawals and transfers, we conclude that First Security falls within the scope of Rule 65(d), that it was bound by the October 21 order, and that it can be held in contempt thereof. Although First Security claims it was "merely . . . carrying out its own independent contractual obligation to allow a depositor's withdrawal upon request," appellee's br. at 32, the fact is that Ronald Mast could not have completed the transactions, thereby violating the October 21 order,

10

without the aid and assistance of First Security. Moreover, Ronald Mast himself was prohibited by the order from requesting First Security to fulfill its contractual obligations. Accordingly, there could have been little risk to First Security in refusing his requests until such time as the order was lifted.

Because the district court's resolution of the contempt proceedings was based in part upon erroneous conclusions of law and omissions of necessary factual findings, we remand this matter to the district court for further proceedings. In doing so, we note that Reliance faces significant hurdles before it can prevail.

A party alleging contempt and seeking a civil remedy must prove it by clear and convincing evidence. Grace, 72 F.3d at 1241. Under the circumstances of this case, Reliance must prove (1) that First Security had actual notice of the October 21 order at the time of the relevant withdrawals and transfers; (2) that the October 21 order was in effect at the time of the transactions, Petroleos, 826 F.2d at 401; and (3) that the October 21 order was "clear and unambiguous," Grace, 72 F.3d at 1241, in its prohibition of these transactions. Any ambiguities or omissions in the order will be construed in favor of First Security. NBA Properties, 895 F.2d at 32.

Assuming that Reliance can prove these elements, it must also demonstrate actual damages. Gemco, 61 F.3d at 100 (A party "is liable in a civil contempt proceeding only for actual damages."). As suggested by First Security, this could prove to be difficult in light of the fact that the restraining orders were lifted in December 1988, thereby freeing defendants to withdraw and transfer funds at will.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.