**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 5, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DERMA PEN, LLC,

      Plaintiff Counterclaim
      Defendant,

v.

4EVERYOUNG LIMITED, doing
business as DermapenWorld;
BIOSOFT (AUST) PTY LTD, doing
business as DermapenWorld;
EQUIPMED INTERNATIONAL PTY
LTD, doing business as
DermapenWorld,

      Defendants,

and

STENE MARSHALL, doing business
as DermapenWorld,

      Defendant-Appellee,

and

4EVERYOUNG LIMITED;
EQUIPMED INTERNATIONAL PTY
LTD.,

      Counterclaim Plaintiffs,

v.

MICHAEL E. ANDERER,

      Counterclaim Defendant -

No. 17-4105
(D.C. No. 2:13-CV-00729-DN-EJF)
(D. Utah)

Appellant,

and

JEREMY JONES; MICHAEL J.
MORGAN; CHAD MILTON;
MEDMETICS, LLC, a Delaware
limited liability company;
DERMAGEN INTERNATIONAL
LLC; DERMA PEN IP HOLDINGS,
JOHN DOES 1-25,

Counterclaim Defendants.

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **HARTZ**, Circuit Judges.[**]

The parties are familiar with the complex procedural history of this case involving trademark infringement and counterclaims for breach of contract.[1] This appeal only concerns Michael Anderer's motions to (1) vacate the civil contempt

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] In accordance with our order of March 21, 2018, this matter was submitted on the briefs.

[1] *See generally Derma Pen, LLC v. 4EverYoung Ltd.*, 2017 WL 2258362 (D. Utah May 22, 2017); *Derma Pen, LLC v. 4EverYoung Ltd.*, 2015 WL 803148 (D. Utah Feb. 26, 2015), *vacated*, 2016 WL 4532106 (D. Utah Aug. 29, 2016).

-2-

orders previously entered against him, and (2) release the injunction bond posted

by his adversary.  The district court denied those motions, and we affirm.[2]

# I.  Background

We begin by explaining why the district court enjoined Anderer and why it

later held him in contempt.

## A.  *The suit*

Derma Pen LLC sued 4EverYoung Limited and associated parties for

trademark infringement.  4EverYoung counterclaimed for breach of contract and

sought specific performance.  Specifically, 4EverYoung's agreement with Derma

---

[2]  While Anderer's appeal is not timely to challenge the final judgment in this case, it is a timely appeal of the district court's post-judgment order denying the two motions at issue here.  The district court entered final judgment in its May 8 order, but it did not decide the two motions relevant here.  First, both motions were collateral to the merits—they had nothing to do with the findings of fact and conclusions of law the district court entered in the May judgment.  Second, the district court carefully listed the motions it was deciding in the May judgment, and did not list these two.  *See* Supp. App. 185–87.  Third, in the post-judgment order denying these two motions, the district court explicitly noted that the May judgment "left the . . . motions unresolved."  Supp. App. at 191.

That being so, even if we might normally presume a final judgment implicitly denies all unaddressed motions, there is more than sufficient indication the judgment here did not do so.  *See also Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1116 (10th Cir. 2004).  As a result, Anderer was not "on notice of the need to appeal" on these collateral issues after the May judgment.  *See O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1208 (10th Cir. 1992).  He was entitled to appeal the district court's post-judgment order denying the two pre-judgment motions separately.  *Cf. Turnbull v. Wilken*, 893 F.2d 256, 257–59 (10th Cir. 1990) (per curiam) (unadjudicated sanctions issues pending at the time of judgment are separately appealable once resolved).

Pen provided that upon its termination, 4EverYoung would have the right to purchase the Derma Pen trademark and the associated domain name. After the parties terminated the agreement, however, Derma Pen refused to sell the trademark and domain name to 4EverYoung. 4EverYoung's counterclaim thus sought to force Derma Pen to sell it those assets.

### B. *Anderer's attempts to obtain the assets*

Michael Anderer is a long-time investor in Derma Pen and was involved in the agreement between Derma Pen and 4EverYoung. In 2014, Anderer made Derma Pen a large loan and secured it against all of Derma Pen's assets—including the trademark assets. Up until this point, Anderer had been serving as a board member for Derma Pen. He resigned because of alleged conflicts between his roles as a creditor and board member.

Shortly after execution of the 2014 Note—and one business day before trial was to begin in this case—Derma Pen filed for bankruptcy. The district court accordingly placed the litigation on hold. As the bankruptcy proceedings began, the bankruptcy court granted Anderer permission to loan Derma Pen more money through debtor-in-possession financing. Derma Pen also stipulated to the validity and priority of Anderer's secured interests, and Anderer prepared a bid to sell the trademark assets as a means to pay Derma Pen's secured creditors.

These proceedings did not get very far. On December 19, 2014, the bankruptcy court dismissed the bankruptcy petition as a bad faith attempt to

-4-

stymie the district court's adjudication of 4EverYoung's claim involving the trademark assets. The court also noted Derma Pen's liabilities did not exceed its assets.

After the dismissal, Anderer sent Derma Pen notice of default and demanded payment of its outstanding loans. He then asked Derma Pen's CEO to confess judgment in Utah State Court. Derma Pen did so on December 22, 2014, and the Utah court rendered judgment for Anderer on December 24, 2014.

Meanwhile, Anderer's counsel, Samuel Saunders, also asked Derma Pen to assign Anderer the trademark assets as a partial surrender of a secured asset under Article 9 of the Utah Commercial Code. Saunders suggested this transfer as an alternative to seizing the trademark assets through execution of Anderer's state court judgment. Derma Pen assigned Anderer the trademark and recorded it with the U.S. Patent Office Electronic Transfer Assignment system on December 22, 2014.

## C. *The temporary restraining orders and preliminary injunctions*

Upon learning of these actions, 4EverYoung filed a renewed motion for a preliminary injunction—claiming the transfers would violate Utah's fraudulent transfer law. The district court entered a temporary restraining order against Derma Pen on December 23, 2014. On January 6 (with a written order on January 12), the court granted 4EverYoung a preliminary injunction against Derma Pen.

Both orders prohibited Derma Pen and those "acting in concert" with it from transferring the trademark assets. App. 760, 818, 1412.

On January 12, worried by Anderer's continued steps toward selling the assets, 4EverYoung added Anderer as a party to the suit. On January 21, the district court granted 4EverYoung's motion for a temporary restraining order preventing Anderer from transferring the assets. The court did so without a hearing because 4EverYoung claimed Anderer was planning to sell the assets at a public sale the next day. On February 25, the district court granted 4EverYoung a preliminary injunction enjoining Anderer from transferring the trademark assets "except in connection with a foreclosure based on the Debtor In Possession (DIP) Financing." App. 1439.

### D. *Anderer's alleged violations of the orders*

After the temporary restraining order and preliminary injunction against Derma Pen, but before the orders enjoining Anderer personally, Anderer took a series of actions to transfer the trademark assets. This included filing an application for a Writ of Execution for the Utah State Court judgment, filing a Notice of Constable Sale, and expressing his intent to go forward with the sale of the assets in open court, among other things.

Anderer also took steps to transfer the trademark assets after the court issued a temporary restraining order and preliminary injunction enjoining him personally. On February 26, Anderer held a public sale of the trademark assets

pursuant to his debtor-in-possession loan foreclosure. He purchased the trademark assets himself. The same day, he transferred the assets to Dermagen International LLC, a foreign company in which Anderer holds a minority stake.

### E. *The district court holds Anderer in civil contempt*

4EverYoung moved to hold Anderer in civil contempt for violating the orders enjoining Derma Pen—and those "acting in concert"—as well as the orders enjoining Anderer personally. In its written orders on April 15, 2015 the district court found Anderer had known about the orders and willfully violated them. The court thus ordered Anderer to pay 4EverYoung's attorneys' fees and costs in bringing the motion.

### F. *Anderer's motions*

Later in 2015, 4EverYoung and the other defendants started having trouble retaining their attorneys. One after another, the defendants' attorneys moved to withdraw because of unpaid fees. The district court repeatedly granted the defendants time to obtain new counsel, and warned that it would impose sanctions if the defendants did not obtain counsel by the court's deadline. On August 29, 2016—after several months, four sets of withdrawn attorneys, and a string of broken deadlines—the district court sanctioned 4EverYoung by vacating the preliminary injunctions it had obtained against Derma Pen and Anderer.

With the injunctions on which the civil contempt orders had been premised now vacated, Anderer moved to vacate the civil contempt orders too.

On January 31, 2017, after more of the same from the defendants, the district court entered default judgment against 4EverYoung and the other defendants. Anderer then moved to have the injunction bond 4EverYoung had posted released to him as damages.

The district court entered final judgment for Derma Pen and Anderer on May 9. But about a month later, on June 7, the district court denied Anderer's motions to vacate the contempt orders and release the injunction bond.

## II. Analysis

Anderer argues the district court should have vacated the contempt orders and released the injunction bond. We affirm the district court on both issues.[3]

### A. *The civil contempt orders*

Anderer appeals from the court's denial of his motion to vacate the contempt orders. While Anderer made his motion before final judgment, and so was not acting pursuant to Rule 60(b), his motion is in essence a motion for reconsideration of those orders in light of changed circumstances. We therefore review for abuse of discretion. *See Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1235 (10th Cir. 2001).

---

[3] The dissent argues Anderer forfeited his arguments on appeal because he did not make the same arguments before the district court. But 4EverYoung did not raise forfeiture—or, indeed, even file a brief. Though we have discretion to raise forfeiture sua sponte, we decline to do so here. *See United States v. Rodebaugh*, 798 F.3d 1281, 1314 (10th Cir. 2015); *United States v. Elliott*, 684 F. App'x 685, 688 (10th Cir. 2017) (unpublished).

"Under an abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (internal quotation omitted). "That is to say, we will not alter a trial court's decision unless it can be shown that the court's decision was an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Id.* at 1236 (internal quotation omitted). Anderer maintains the district court abused its discretion by denying his motion to vacate the contempt orders against him. We are not persuaded.

To begin, the mere fact the district court vacated the injunctions did not compel it to vacate the contempt orders too. Generally, it is true "a claim for civil contempt must fall if the order that was disobeyed is subsequently reversed by the issuing court or the appellate court, or if its issuance exceeded the power of the issuing court." *Reliance Ins. Co. v. Mast Const. Co.*, 84 F.3d 372, 376 (10th Cir. 1996). This rule makes sense because civil contempt is not punitive—it is meant only to compensate the party wronged by the other party's disobedience of a court order. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 302, 303–04 (1947). It follows that if the disobedient party should never have been enjoined, there is no need to compensate the party who sought the injunction.

This does not mean, however, that a contempt order is automatically overturned whenever the violated order terminates. If the violated order terminates for some reason unrelated to the merits—like mootness or simply the passage of time—the contempt order still stands. *Reliance Ins. Co.*, 84 F.3d at 376.

The district court here vacated the preliminary injunctions as a sanction against 4EverYoung. Because the court never found the injunctions had been incorrectly granted on the merits, it had no obligation to vacate the contempt orders.

Nevertheless, Anderer argues the district court should have vacated the contempt orders for two reasons: first, because the February 25 injunction did not prohibit his conduct in a sufficiently clear way[4]; second, because the district court incorrectly granted the injunctions on the merits.[5] We find merit in neither.

_____

[4] In his opening brief, Anderer only challenges the February 25 injunction for insufficient clarity. In a previous interlocutory appeal, he argued the other orders were also insufficiently clear, but he did not renew those arguments in this appeal. Even if he had done so, however, we find each of the court's orders sufficiently proscribed Anderer's conduct.

[5] Anderer challenges the district court's denial of his motion to vacate the contempt order by attacking the contempt orders themselves. He does so in part by calling into question the injunction he violated. While it is unclear whether a party can even contest a contempt order by challenging the validity of the injunction he or she violated *after* that injunction has already been vacated, having received no argument on this point from the appellees, we assume Anderer can do so here.

### 1. Clarity of February 25 preliminary injunction

Rule 65(d)(1) requires an injunction to "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). A party alleging civil contempt must therefore prove by clear and convincing evidence that the order its adversary violated was "clear and unambiguous." *Reliance Ins. Co.*, 84 F.3d at 377. The court is to construe any ambiguities in favor of the party the court is being asked to hold in contempt. *Id.*

Anderer contends the February 25 preliminary injunction (enjoining him personally) did not clearly prohibit him from transferring the trademark assets to Dermagen International, LLC. The district court concluded the February 25 injunction clearly enjoined Anderer's actions. While formally a question of law, "[w]e give deference to the district court's interpretation of its own order." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 2018 WL 1559980, at *7 (10th Cir. Mar. 30, 2018); *see Griffin v. Gomez*, 741 F.3d 10, 25 (9th Cir. 2014).

Applying this deference, we conclude the district court's interpretation is correct: the February 25 injunction clearly proscribed Anderer's conduct. The injunction ordered Anderer not to "transfer the Trademark or Domain Name or any interest therein . . . *except in connection with a foreclosure based on the Debtor In Possession (DIP) Financing*." App. 1439–40 (emphasis added). Because Anderer's transfer to Dermagen was not "in connection with" the foreclosure, it came under the injunction's prohibition.

-11-

Anderer argues the order's exception expressly allowed him to conduct the foreclosure sale and purchase the assets. He emphasizes that 4EverYoung recognized this was so because it moved to delete this foreclosure-sale exception from the court's order. We do not dispute this, but neither do we find it relevant. We agree the order expressly allowed Anderer to conduct the foreclosure sale. And we also agree Anderer was entitled to purchase the assets at the foreclosure sale, as that constituted a transfer "in connection with" the foreclosure. But what Anderer could *not* do was transfer the asset *again* after the foreclosure sale. The injunction's terms clearly prohibited *that* transfer. The district court thus held Anderer in contempt for his *subsequent* transfer to Dermagen International—not for holding the foreclosure sale or purchasing the assets himself.

Even so, Anderer claims the transfer to Dermagen did not violate the injunction because once he had transferred the assets to himself at the foreclosure sale, he was free to transfer the assets to whomever he wished. In other words, he argues once the assets were transferred through this foreclosure-sale exception, the injunction no longer applied. But this ignores the clear language of the order. The order banned Anderer from making *any* transfer *except* one in connection with the foreclosure sale. Once he had made such a transfer, the order continued to bar all other transfers.

We thus agree with the district court that its February 25 preliminary injunction clearly prohibited Anderer's transfer to Dermagen International.

-12-

### 2. *Granting of the injunctions*

Anderer also contends the district court should have vacated the contempt orders because it had erroneously granted them. We conclude the district court did not abuse its discretion in granting the injunctions.

A movant seeking a preliminary injunction must establish "(1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). We find the district court's conclusions as to each of these factors were not an abuse of discretion.

### a. *Substantial likelihood of success on the merits*

Anderer makes several arguments why 4EverYoung could not prevail on its fraudulent transfer claim.

First, Anderer says the trademark and domain name cannot constitute "assets" under Utah fraudulent transfer law because the Utah Fraudulent Transfer Act (UFTA) defines "asset" to exclude "property to the extent it is encumbered by a valid lien." Utah Code Ann. § 25-6-102. In other words, he claims transfers of property pursuant to a lien are not within the UFTA's scope. Similarly, Anderer argues transfers pursuant to a UCC security interest are also not within the UFTA's scope.

-13-

But the UFTA is not so easily defeated. It is true the Act does not apply to transfers pursuant to *valid* liens and security interests (which is unsurprising, given the Act is only meant to prevent *fraudulent* transfers). Yet the Act does prohibit the fraudulent *creation* of liens and security interests as a way of fraudulently transferring property. § 25-6-102(16). This is clear from the fact the Act defines "transfer" to include "creation of a lien or other encumbrance." *Id.* So the fact Anderer created a lien or security interest on the trademark assets through either his 2014 Note or the debtor-in-possession loan does not exempt his actions from Utah's fraudulent transfer statute. Instead, the liens and security interest *are part of* the scheme to fraudulently transfer the asset.

Second, Anderer argues DermaPen was not insolvent at the time. He points to the fact the bankruptcy court found DermaPen's liabilities did not exceed its assets. Again, the district court's conclusion was reasonable. The court found Derma Pen was insolvent because DermaPen declared itself insolvent when it filed for bankruptcy and because the 2014 Note and the Confession of Judgment concerned *all* of DermaPen's assets. And in any event, 4EverYoung did not have to prove insolvency to prevail; insolvency is only one factor in determining whether there was "intent to hinder, delay, or defraud any creditor of the debtor." *See* Utah Code Ann. § 25-6-102.

Third, Anderer asserts 4everYoung is not a "creditor" as defined by the UFTA. The UFTA defines "creditor" as "a person that has a claim," and it

-14-

defines "claim" as "a right to payment." Utah Code Ann. § 25-6-102 (3)-(4).

Anderer insists a *right to purchase* the trademark assets cannot be a *right to payment*, and so 4everYoung is not a creditor protected by the Act.

But the district court reasoned that 4everYoung could obtain money damages for the violation of its right to purchase, even though it chose to request specific performance instead. In the court's view, this possible claim for damages meant 4EverYoung had a "right to payment" as defined by the Act. And because the UFTA is to be "liberally construed," *National Loan Investors, L.P. v. Givens*, 952 P.2d 1067, 1069 (Utah 1998), the district court found Anderer's interpretation too restrictive. *See also* Payment, Black's Law Dictionary (2d ed) ("[T]he *performance of a duty*, promise, or obligation . . . by the delivery of money *or other value*." (emphasis added)).

For these reasons, the district court did not abuse its discretion by concluding that 4EverYoung was likely to prevail on the merits.

### b. Irreparable harm

The district court also reasonably found 4EverYoung would suffer irreparable harm if the court did not grant the preliminary injunctions. The court decided the trademark and domain name were unique assets for which 4EverYoung could obtain specific performance. It also found Anderer would have outbid 4EverYoung at any public sale. Given these reasonable conclusions,

-15-

we cannot say the court abused its discretion by finding 4EverYoung would suffer irreparable harm.

Anderer contends any harm is 4EverYoung's own fault because it did not negotiate more protective provisions for its contractual right of first refusal. But that logic would apply to any contractual failure to specify fraudulent transfers as prohibited conduct, and does not preclude a finding of irreparable harm here.

### c. The balance of harms

The district court concluded 4EverYoung's potential harms if the court did not grant a preliminary injunction outweighed the harms Anderer and Derma Pen might suffer if an injunction were wrongfully granted. This too was reasonable. While Anderer and Derma Pen could recover money damages for their temporary inability to transfer the trademark, the court reasonably found 4EverYoung had a good case for specific performance.

### d. Public interest

As for the public interest, the district court reasonably found the public interest in contract enforcement outweighed any contrary public interests.

\* \* \*

On the whole, we find the district court did not abuse its discretion by affirming its decision to grant preliminary injunctions against Anderer and Derma Pen.

### B. *The injunction bond*

We now turn to Anderer's motion to release the injunction bond. We also review a district court's decision to grant or deny damages on a bond for abuse of discretion. *Front Range Equine Rescue v. Vilsack*, 844 F.3d 1230, 1233 (10th Cir. 2017).

Anderer moved for the district court to award him the injunction bond 4EverYoung had previously posted both as a further sanction against 4EverYoung and as damages because the court had erroneously granted the injunctions. On appeal, Anderer does not dispute the district court's refusal to award him the injunction bond as a sanction against 4EverYoung. He only argues the court should have done so because it erroneously granted the injunctions. Since we have concluded the court did not abuse its discretion by finding it had not erroneously issued the injunctions, we affirm the district court.

## III. Conclusion

We therefore **AFFIRM.**

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge

17-4105, <u>Derma Pen v. 4EverYoung, et al.</u>
**BRISCOE**, Circuit Judge, dissenting

      The majority concludes this appeal arises from a final post-judgment decision separate and apart from the district court's final judgment on the merits entered on May 8, 2017.  Upon reaching this conclusion, the majority addresses the merits of a now-vacated preliminary injunction central to the underlying litigation to resolve waived arguments.  I respectfully disagree with the majority's approach.  I would conclude this appeal is untimely and dismiss this case for lack of jurisdiction.  The majority's method suffers from three flaws, each fatal on its own.

## I

      On May 8, 2017, the district court entered final judgment in favor of Derma Pen.  The district court's order stated, "[t]his is a Final Judgment.  The clerk is directed to close the case."  Supp. App. Case No. 17-4105, at 136 (hereinafter "Supp. App.").  The docket also accurately reflected that final judgment was entered in the case:

> FINAL JUDGMENT AND PERMANENT INJUNCTION entered in favor of Derma Pen and against 4EverYoung Limited, BioSoft, Equipmed International, Stene Marshall: plaintiff is awarded $11,907,320.00 in monetary damages and $3,668,007.53 in attorneys' fees and costs, plus postjudgment interest at the rate provided by 28 USC 1961(a), from the date this judgment is entered until the date this judgment is paid – CASE CLOSED.

<u>Id.</u> at 118–19.

      Through this ruling and docket entry, the district court: (1) declared its intention that the order embody a final judgment and be the court's final action in the case, <u>see</u> <u>United States v. F. & M. Schaefer Brewing Co.</u>, 356 U.S. 227, 232 (1958); and

(2) reduced the damages to a sum certain that Derma Pen shall recover, see Harbert v. Healthcare Services Group, Inc., 391 F.3d 1140, 1145 (10th Cir. 2004). If a court does these two things, its decision "constitutes [the] final judgment." F. & M. Schaefer, 356 U.S. at 232.

The majority concludes that in its May 8, 2017 final judgment, the district court "did not decide the two motions relevant here," highlighting that "the district court carefully listed the motions it was deciding in the May judgment, and did not list" Anderer's motions to: (1) vacate the contempt orders against him, and (2) release $140,000 in bond to him. Majority, at 3 n.2. However, the district court only listed in its May 8, 2017 final judgment the orders it was granting or holding moot. The district court did not list any motions that it was denying on the merits. And, the district court was correct in omitting such motions, as by entering final judgment, the district court implicitly denied all motions pending on the docket—including those to vacate contempt orders and release $140,000 in bond, which were filed on October 21, 2016, and March 17, 2017, respectively, and pending before final judgment. See Thompson v. Coulter, 680 F. App'x 707, 712 (10th Cir. 2017) (unpublished) ("By entering final judgment, however, the court implicitly denied the pending motions."). Consequently, the district court resolved all motions pending before it. With knowledge of language indicating that the "CASE [IS] CLOSED," Anderer was put "on notice of the need to appeal," O'Connor v. Midwest Pipe Fabrications, Inc., 972 F.2d 1204, 1208 (10th Cir. 1992), which he had 30 days to do, Fed. R. App. P. 4(a)(1)(A).

2

Rather than file a timely notice of appeal from the district court's May 8, 2017 final judgment, nine days after its entry, on May 17, 2017, Anderer filed at the district court a "Request to Submit for Decision" under the District of Utah's local rule, DUCivR 7-3. Dkt. 1048.[1] A "Request to Submit for Decision" is intended to alert the district court that a pending motion is ripe for decision. A party is to file a "Request to Submit for Decision" once a pending motion is fully briefed or when the time to file a response or reply has expired, likewise rendering the motion ripe for decision at the district court's discretion. In other words, this type of motion is intended for use during litigation, not after a final judgment that resolves all pending motions.

Anderer's "Request to Submit for Decision" stated in its entirety:

> Michael Anderer, through counsel and pursuant to DUCivR 7-3, hereby requests to submit for decision his "Motion for Release of $130,000 [sic] Bond." Mr. Anderer filed the motion on March 17, 2017. There was no opposition filed, and the fourteen days to do so under DuCivR 7-1(b)(3)(B) has passed. No party has requested oral argument. Accordingly, the motion is ripe for decision.

Dkt. 1048 (footnotes omitted).

As is evidenced by the "Request to Submit for Decision," Anderer's "Motion for Release of $130,000 [sic] Bond" was ripe for decision on April 1, 2017—over a month before final judgment was entered. That is, as of April 1, 2017, Anderer could have—

---

[1] Anderer omitted the documents found in the district court's docket entries 946 and 1048 from his supplemental appendix filed in this appeal, as well as the appendices filed in the related appeals in case numbers 15-4040 and 17-4096. Because they are relevant to the resolution of this case, I take judicial notice of these publicly-filed documents. See Fed. R. Evid. 201; Allen v. Zavaras, 416 F. App'x 784, 785 n.2 (10th Cir. 2011) (unpublished).

3

and likely should have—filed a "Request to Submit for Decision." Yet, his request did not come until more than a month later, after the district court had entered final judgment in this case.

Anderer's "Request to Submit for Decision" did not purport to be a motion filed under any of the Federal Rules of Appellate Procedure that toll the time to file an appeal. See Fed. R. App. P. 4(a)(4)(A)(i)–(vi). Nor is it such a motion; it is simply a request to rule. Thus, Anderer did not timely file a notice of appeal, and case number 17-4105 should be dismissed.

## II

As explained, the district court had resolved the motions to vacate contempt orders and release bond in its May 8, 2017 final judgment. The majority gives weight to the district court's statement in its June 7, 2017 post-judgment order that the motions to vacate contempt orders and release bond were "left . . . unresolved" following its May 8, 2017 final judgment. Majority, at 3 n.2 (quoting Supp. App., at 191). If this were true, the majority still errs in exercising jurisdiction. We may review post-judgment collateral orders. However, the order and matters before us in this appeal are not collateral to the merits of this case.

The majority concludes that Anderer's motions to vacate contempt orders and release bond—and presumably the district court's June 7, 2017 resolution thereof—are collateral to the merits of the case because they "had nothing to do with the findings of fact and conclusions of law the district court entered in the May judgment." Id. I disagree.

In his motion to vacate the contempt orders filed at the district court, Anderer presented three arguments. First, Anderer claimed that the district court should vacate the contempt orders to further sanction Defendants for abandoning the litigation. Second, he argued that the district court should vacate the contempt orders because Defendants "abandoned the litigation before the award of damages became final." Dkt. 946, at 4. Third, Anderer contended that the injunctions on which the contempt orders were based were wrongfully entered.

In his motion to release bond, Anderer presented two similar arguments. First, he claimed that the district court should release the bond to him to further sanction Defendants for failing to participate in proceedings. Second, he argued again that the injunctions were erroneously entered.

In arguing that the injunctions were erroneously issued in his motions to vacate the contempt orders and release bond, Anderer depended on the facts that Defendants "abandoned the . . . litigation," "fail[ed] to appear or appoint counsel," and did not "pay . . . attorneys." See, e.g., id. at 4–5. As the district court noted, Anderer "relie[d] on a series of inferences" in support of his "argument that the injunctions were wrongfully entered." Supp. App., at 196. Anderer claimed that 4EverYoung's "failure to prosecute its claims" suggested that 4EverYoung "never intended to purchase the Trademark" and therefore "4EverYoung was not likely to succeed on its claims, nor would it had suffered irreparable harm had a restraining order or injunction not issued." Dkt. 946, at 7. Thus, at the heart of both Anderer's motions to vacate the contempt orders and release bond was Defendants' failure to participate in the litigation and prosecute its counterclaims.

5

As the majority aptly suggests, collateral issues are those "having no bearing what[so]ever on the judgment." <u>F.C.C. v. League of Women Voters of California</u>, 468 U.S. 364, 373 n.10 (1984). Yet, Defendants' failure to participate in proceedings served as the very basis for the district court's decisions to: (1) strike and dismiss Defendants' counterclaims; (2) vacate the preliminary injunctions; (3) enter a certificate of default against Defendants; and most importantly, (4) enter its findings of fact and conclusions of law in the May 8, 2017 final judgment. Indeed, in its May 8, 2017 final judgment, the district court concluded, "[b]ecause 4EverYoung failed to reasonably participate in proceedings to establish the DERMAPEN Marks' value as required by the Sales Distribution Agreement and this Court's orders, any rights that 4EverYoung may have had to purchase the DERMAPEN Marks or Domain Name terminated in the course of the current litigation." Supp. App., at 175.

The district court's analysis in its June 7, 2017 memorandum decision and order demonstrates that this is a decision on the merits which was effectively resolved by the May 8, 2017 final judgment. The district court notes, "there has been no order or finding that Derma Pen and Anderer were wrongfully enjoined," the preliminary injunction had not been vacated on the merits, nor was it vacated nunc pro tunc. <u>Id.</u> at 197. Rather the district court vacated the preliminary injunction "<u>because</u> of Defendants' failure to appoint counsel," which is also the reason "Defendants' rights [to the trademark] terminated," as supported by the findings of fact and conclusions of law entered on May 8, 2017, which the district court then quotes in its June 7, 2017 decision. <u>Id.</u> at 197–98 (emphasis added).

6

Thus, the district court's resolution—or, re-resolution on June 7, 2017—of Anderer's motions to vacate the contempt orders and release bond is a determination not separate and apart from the merits of the underlying litigation.[2]  Anderer's motions did not raise "important questions that arose after a final judgment was entered."  Shaw v. AAA Eng'g & Drafting Inc., 138 F. App'x 62, 72 (10th Cir. 2005) (unpublished).  Nor were they unreviewable on appeal from the district court's May 8, 2017 final judgment; they should have been appealed therefrom.[3]

---

[2] The arguments Anderer advances in this appeal—distinct from those in his motion to vacate contempt orders at the district court—also go to the merits of this case. On appeal, Anderer attacks the validity of the preliminary injunctions based on their definiteness, as well as the elements of a preliminary injunction and Defendants' alleged failure to meet them.  The district court entered preliminary injunctions to prevent the transfer of the trademark that gave rise to, and was the subject of, this litigation. Moreover, the district court's entry of contempt was intended to remedy the alleged injury that gave rise to Defendants' counterclaims against Anderer.  These issues were thoroughly considered by the district court at the preliminary injunction and contempt stages of litigation, hundreds of docket entries prior.  The district court's interlocutory decisions merged into the final judgment entered on May 8, 2017.  Thus, Anderer is challenging the district court's findings of fact and conclusions of law entered prejudgment.

[3] To the extent Anderer was seeking to "sanction" Defendants for their litigation conduct in his motions to vacate contempt orders and release bond, a motion for sanctions can be collateral to the district court's merits determination and separately reviewable.  Cf. Turnbull v. Wilken, 893 F.2d 256, 257–59 (10th Cir. 1990) (per curiam) (unadjudicated sanctions issues pending at the time of judgment are separately appealable once resolved).  However, this does not provide us with jurisdiction here.  As the majority acknowledges, "[o]n appeal, Anderer does not dispute the district court's refusal to award him the injunction bond as a sanction against 4EverYoung.  He only argues the court should have done so because it erroneously granted the injunctions."  Majority, at 17 (emphasis added).  Anderer lodges this same claim as regards the motion to vacate contempt orders—"Anderer argues the district court should have vacated the contempt orders for two reasons: first, because the February 25 injunction did not prohibit his conduct in a sufficiently clear way; second, because the district court incorrectly granted

(Continued . . .)

7

## III

Finally, Anderer waived the arguments he now raises. As a reminder, in support

of his motion to vacate at the district court, Anderer argued that the district court should

vacate the contempt orders: (1) as further sanctions against Defendants for abandoning

the litigation, Dkt. 946, at 4; and (2) because the district court wrongly entered the

injunctions, as 4EverYoung's "failure to prosecute its claims" suggested that

4EverYoung "never intended to purchase the Trademark" and therefore "4EverYoung

was not likely to succeed on its claims, nor would it had suffered irreparable harm had a

restraining order or injunction not issued," id. at 7. That is, Anderer argued that the

injunctions were wrongfully entered because of Defendants' subsequent failure to

participate in court proceedings.

In this appeal Anderer also argues that the injunctions giving rise to the contempt

proceedings were invalid, but he does so on a different basis than that in his motion to

vacate the contempt orders. See Aplt. Op. Br. Case No. 17-4105, at 19–20. On appeal,

Anderer contends one of the injunctions was not sufficiently definite. Id. at 20–23.

Anderer also claims the district court wrongly issued the preliminary injunctions because:

(1) 4EverYoung was not likely to succeed on the merits; (2) 4EverYoung could not

establish irreparable harm; (3) the balance of equities did not favor 4EverYoung; and (4)

---

(cont'd
the injunctions on the merits." Id. at 10. Stated differently, on this appeal from a
purported collateral order, Anderer seeks review of the merits of injunctions entered and
vacated during the course of litigation. Such determinations merged into the final
judgment, and we are without jurisdiction to address them now.

8

injunctive relief was not in the public's interest. Id. at 23–37. In support of his claim that 4EverYoung was not likely to succeed on the merits Anderer presents three arguments. Anderer contends that the trademark and domain name cannot constitute "assets" under the Utah Fraudulent Transfer Act (the "UFTA"), nor was 4EverYoung a "creditor" under the UFTA. Anderer further argues that Derma Pen was not insolvent at the preliminary injunction stage of litigation. Anderer also contends that any harm 4EverYoung may have suffered at the preliminary injunction stage of litigation was self-imposed because it should have negotiated more favorable contractual provisions regarding its right of first refusal. These arguments analyzed by the majority, among others presented in this appeal, were not set forth in Anderer's motion to vacate the contempt orders filed in the district court. Thus, while the majority's Order and Judgment claims to review Anderer's motion to vacate, it analyzes arguments not found therein.

Instead, Anderer's arguments in this appeal are all but identical to the ones he lodged over two years earlier in case number 15-4040, in support of his argument that the district court erred by holding him in contempt for violating the injunctive relief orders in the first instance. See Aplt. Op. Br. Case No. 15-4040, at 35–49; 55–57; Aplt. Op. Br. Case No. 17-4105, at 1 ("Some of the issues presented by Appellant Michael Anderer in this appeal were also presented in" case number 15-4040). This is perhaps unsurprising as Anderer's opening brief in this appeal reveals his belief that the district court's June 7, 2017 order was the final judgment in this case. See Aplt. Op. Br. Case No. 17-4105, at 1 ("This court has jurisdiction pursuant to 28 U.S.C. § 1291. The district court entered a final order, resolving all of the remaining issues, on June 7, 2017. Appellant Michael

9

Anderer timely appealed from this order on June 23, 2017.").  Indeed, in this appeal Anderer purports to "renew th[e] arguments" he raised in case number 15-4040 "to ensure that the court's jurisdiction to consider th[o]se issues is now unassailable" believing that this appeal "presents an undisputedly appropriate jurisdictional vehicle for raising Anderer's arguments regarding the district court's injunctive relief and civil contempt orders."  Aplt. Op. Br. Case No. 17-4105, at 1–2.

Anderer's contention that the district court's rulings regarding injunctive relief and contempt are reviewable in this appeal would only make sense if the June 7, 2017 decision were the final judgment in this case.  But it is not.  Rather, as the majority agrees, the district court's May 8, 2017 order was the final judgment in this case. Therefore, for our jurisdiction to have been "unassailable" to consider the issues in case number 15-4040, which merged into the final judgment entered on May 8, 2017, Anderer should have appealed from the May 8, 2017 final judgment.

Yet, although "Anderer's appeal is not timely to challenge the final judgment in this case," Majority, at 3 n.2, the majority nonetheless considers the arguments not raised in Anderer's motion to vacate contempt, but rather presented in case number 15-4040. See O&J Case No. 15-4040, at 3 ("In any event, we have dealt with many of the same issues in Anderer's appeal after final judgment in case number 17-4105.").  In essence, the majority relies on the purported timeliness of this appeal to address arguments on the merits presented in case number 15-4040, but not raised in Anderer's motion to vacate.

**IV**

10

I decline to set aside the multitude of jurisdictional and procedural hurdles presented here to reach the merits of Anderer's appeal. Anderer is not a litigant that would be unfairly denied his day in court. His claims have been adjudicated in state court, bankruptcy court (pronounced to have been filed in bad faith), district court, and now by us. The district court entered final judgment in Derma Pen and Anderer's favor, awarding them over 15 million dollars in monetary damages and attorneys' fees and costs. The issues Anderer raises in this appeal are not collateral to the issues resolved in the district court's May 8, 2017 final judgment. If he thought the May 8, 2017 judgment was wrongly decided, his option was to appeal from that judgment. I would dismiss this appeal as untimely filed.